*Decision will be entered under Rule 155.*

LLOYD MCKIM GARRISON AND SARAH GARRISON,
PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 23172-83.         Filed April 22, 1986.

*James B. Lewis, William Hay,* and *Jose E. Trias,* for the petitioners.
*Brian Masumoto,* for the respondent.

STERRETT, *Chief Judge*: By notice of deficiency dated June 16, 1983, respondent determined a deficiency in petitioners' Federal income tax for the taxable year ended December 31, 1980, in the amount of $928. The issues for resolution are (1) whether expenses petitioner incurred as an author in writing a book are subject to the provisions of section 280,[1] (2) if section 280 applies to authors, whether petitioner is excluded from its coverage by the statute's effective date provision, and (3) if section 280 applies to authors, whether respondent is precluded from applying the statute by virtue of section 2119.[2]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue.

[2]See note 11 *infra.*

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Lloyd McKim Garrison (hereinafter petitioner) and Sarah Garrison are husband and wife and resided in New York, New York, when the petition was filed in this case. They timely filed their joint Federal income tax return for the taxable year 1980 with the Internal Revenue Service Center in Holtsville, New York. The return was prepared under the cash method of accounting.

Since approximately 1970, petitioner has been in the trade or business of being an author. In 1972, he entered into a contract with Random House, Inc., a publisher, to publish a book entitled "Still a Distant Drum." Under the terms of the contract, petitioner received two advances against royalties. He received an advance of $2,500 in 1972 and an advance of $2,500 in 1978, and these amounts were reported by petitioner as income in the respective taxable years. At the time of trial, petitioner had not finished writing the book "Still a Distant Drum" and, thus, it obviously has not been published.

During 1980, the taxable year in issue, petitioner paid or incurred the following expenses with respect to writing the aforenoted book:

| | |
|---|---:|
| Depreciation | $79 |
| Dues and publications | 47 |
| Office supplies | 267 |
| Rent | 1,370 |
| Repairs | 97 |
| Telephone | 328 |
| Utilities | 207 |
| Cleaning | 126 |
| Books and periodicals | 198 |
| Business entertainment | 132 |
| Freelance typist and copying | 204 |
| | 3,055 |

Petitioner claimed deductions for these expenditures for the taxable year 1980. Respondent disallowed these claimed deductions on the ground that section 280 required petitioner to capitalize the deductions and depreciate them under the income forecast method.

OPINION

The first issue for resolution is whether section 280 applies to the expenses petitioner incurred as an author in writing the book entitled "Still a Distant Drum." Petitioner argues that section 280 is not applicable to authors because the statute was intended to apply to tax shelters. Respondent maintains that, while section 280 was aimed primarily at tax shelters, its language was drafted broadly and encompasses authors.

The pertinent provisions of section 280, which was enacted as part of the Tax Reform Act of 1976 and amended in 1978,[3] provide as follows:

SEC. 280. CERTAIN EXPENDITURES INCURRED IN PRODUCTION OF FILMS, BOOKS, RECORDS, OR SIMILAR PROPERTY.

(a) GENERAL RULE.—In the case of an individual, except in the case of production costs which are charged to capital account,[4] amounts attributable to the production of a film, sound recording, book, or similar property which are otherwise deductible under this chapter shall be allowed as deductions only in accordance with the provisions of subsection (b). * * *

(b) PRORATION OF PRODUCTION COST OVER INCOME PERIOD.—Amounts referred to in subsection (a) are deductible only for those taxable years ending during the period during which the taxpayer reasonably may be expected to receive substantially all of the income he will receive from any such film, sound recording, book, or similar property. The amount deductible for any such taxable year is an amount which bears the same ratio to the sum of all such amounts (attributable to such film, sound recording, book, or similar property) as the income received from the property for that taxable year bears to the sum of the income the taxpayer may reasonably be expected to receive during such period.

On its face, the language of the statute is unambiguous. It provides that, in the case of an individual, amounts attributable to the production of a book are required to be capitalized and deducted over the life of the income stream generated from the production activity. Since petitioner is an individual who incurred expenditures attributable to the

---

[3]Sec. 280 was added by sec. 210(a) of Pub. L. 94-455, 90 Stat. 1544 (1976), 1976-3 C.B. (Vol. 1) 20, and subsequently amended by sec. 701(m)(2) of Pub. L. 95-600, 92 Stat. 2907 (1978), 1978-3 C.B. (Vol. 1) 141.

[4]This Court has held that the expenses incurred by an author, who is in the trade or business of being an author, are ordinary and necessary expenses under sec. 162 and are not capital expenditures under sec. 263. *Faura v. Commissioner*, 73 T.C. 849 (1980). See also *Snyder v. United States*, 674 F.2d 1359 (10th Cir. 1982); *Stern v. United States*, an unreported case (C.D. Cal. 1971, 27 AFTR 2d 71-1148, 71-1 USTC par. 9375).

writing of a book, those production costs clearly fall within the ambit of section 280.

Petitioner argues that the legislative history behind section 280 supports his position that the statute was intended to apply to tax shelters and not to authors. This Court has stated previously that "where a statute is clear on its face, we would require unequivocal evidence of legislative purpose before construing the statute so as to override the plain meaning of the words used therein." *Huntsberry v. Commissioner*, 83 T.C. 742, 747-748 (1984). Our examination of the legislative history of section 280[5] reveals that Congress enacted this provision in an attempt to curb tax shelters,[6] particularly in the motion picture industry. S. Rept. 94-938, 71-79 (1976), 1976-3 C.B. (Vol. 3) 109-117.[7] However, while congressional action was directed primarily at motion picture shelters, there is no evidence that the legislative purpose was aimed exclusively at tax shelter activity. S. Rept. 94-938, *supra*. Having failed to find an unequivocal legislative purpose, we refuse to interpret the statute in the manner petitioner suggests because to do so would be contrary to the clear language of section 280.

Having found that section 280 is applicable to authors, we must next determine whether petitioner is excluded from its coverage by the statute's effective date provision.[8] The effective date provision provides that—

[section 280] applies to amounts paid or incurred after December 31, 1975, with respect to property the principal production of which begins after December 31, 1975.

While the effective date provision does not elaborate on the term "principal production," the Senate report provides—

---

[5]Much of the legislative history for sec. 280 is interwoven with various reports concerning secs. 465-470 and discussions concerning at risk rules and capitalization of production costs. The Joint Committee Report specifically discusses secs. 280 and 465 together. Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 67-75 (J. Comm. Print 1976), 1976-3 C.B. (Vol. 2) 79-87.

[6]The various shelters were premised on the ideas of tax deferral and use of leverage to benefit limited partner investors. S. Rept. 94-938, 71-79 (1976), 1976-3 C.B. (Vol. 3) 109-117.

[7]The Conference Committee Report explains that the House bill had no provision for sec. 280 and that the section was added by Senate amendment. The conference agreement generally followed the Senate's capitalization rules in sec. 280, but applied them only to production and not to distribution costs. S. Rept. 94-1236, 418-419 (1976), 1976-3 C.B. (Vol. 3) 822-823.

[8]Sec. 210(c) of Pub. L. 94-455, 90 Stat. 1544 (1976), 1976-3 C.B. (Vol. 1) 20.

In the case of a film, principal production means principal photography; in the case of a sound recording, principal production is the date of the recording; in the case of a book, principal production begins with the preparation of the material for publication * * *. [S. Rept. 94-938, *supra* at 78, 1976-3 C.B. (Vol. 3) at 116.]

Petitioner maintains that since he began writing "Still a Distant Drum" in 1972, which was several years before the statute's effective date, the capitalization requirements of section 280 are not applicable to him. It seems to us that petitioner is suggesting that the mere fact that he started writing the book constitutes principal production. Without determining the exact moment when principal production of a book commences, our reading of the above mentioned Senate report language indicates that principal production occurs at a more advanced stage of production. We interject here a reference to the fact that petitioner received an advance payment in 1978. We hold that he has not established that his book was in the principal stage of production prior to January 1, 1976, and thus has failed to carry his burden of proof. Rule 142(a), Tax Court Rules of Practice and Procedure.

Lastly, we must determine whether respondent is precluded from applying the capitalization requirements of section 280 to authors by virtue of section 2119. Section 2119 was enacted as part of the Tax Reform Act of 1976.[9] Section 2119[10] states that the application of sections 61, 162, 174, 263, and 471 to any prepublication expenditure shall be administered without regard to Rev. Rul. 73-395, 1973-2 C.B. 87, and in a manner which such sections were applied consistently by the taxpayer to such expenditures before the date of the issuance of the revenue ruling. Section 2119 was enacted by Congress to make nugatory the effect of Rev. Rul. 73-395, which provided that publishers currently could not deduct expenditures incurred in writing, editing, design, and art work directly attributable

[9]Sec. 2119, Pub. L. 94-455, 90 Stat. 1912 (1976), 1976-3 C.B. (Vol. 1) 388. Secs. 2119 and 280 were concurrently enacted by Congress.

[10]SEC. 2119. REGULATIONS RELATING TO TAX TREATMENT OF CERTAIN PREPUBLICATION EXPENDITURES OF PUBLISHERS.

(a) GENERAL RULE.—With respect to taxable years beginning on or before the date on which regulations dealing with prepublication expenditures are issued after the date of the enactment of this Act, the application of sections 61 (as it relates to cost of goods sold), 162, 174, 263, and 471 of the Internal Revenue Code of 1954 to any prepublication expenditure shall be

to the development of textbooks and visual aids.[11] The ruling held that such costs must be capitalized under sec. 263 and depreciated under section 167. Prior to this revenue ruling, some publishers had deducted prepublication expenditures currently while other publishers had capitalized them. Congress, being aware that historically tax accounting practices in the publishing industry had varied greatly and that no standard practices had been developed, was concerned that retroactive application of Rev. Rul. 73-395 would adversely affect practices consistently followed by many taxpayers for years. H. Rept. 94-658, 337 (1975), 1976-3 C.B. (Vol. 2) 1029; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1976, at 633-635 (J. Comm. Print 1976), 1976-3 C.B. (Vol. 2) 645-647. Thus, section 2119 was enacted to allow publishers to continue their customary tax accounting practices for prepublication expenditures until the Treasury issued prospective regulations that establish a uniform treatment of such expenditures for the entire publishing industry.[12] S. Rept. 94-1236, 502 (1976), 1976-3 C.B. (Vol. 3) 906.

Our reading of section 2119 does not indicate that respondent is prohibited from applying section 280 by virtue of section 2119. Since both sections were enacted concurrently by Congress, it must be assumed that Congress was well aware of section 280 when it drafted section 2119. Its failure to mention section 280 in section 2119 can only be interpreted to mean that Congress intended for section 280 to be applied irrespective of section 2119. Thus, we find that section 280 is not subject to the provisions of

administered—

    (1) without regard to Revenue Ruling 73-395, and

    (2) in the manner in which such sections were applied consistently by the taxpayer to such expenditures before the date of the issuance of such revenue ruling.

(b) REGULATIONS TO BE PROSPECTIVE ONLY.—Any regulations issued after the date of the enactment of this Act which deal with the application of sections 61 (as it relates to cost of goods sold), 162, 174, 263, and 471 of the Internal Revenue Code of 1954 to prepublication expenditures shall apply only with respect to taxable years beginning after the date on which such regulations are issued.

(c) PREPUBLICATION EXPENDITURES DEFINED.—For purposes of this section, the term "prepublication expenditures" means expenditures paid or incurred by the taxpayer (in connection with his trade or business of publishing) for the writing, editing, compiling, illustrating, designing, or other development or improvement of a book, teaching aid, or similar product.

[11]Sec. 2119 was not incorporated into the Internal Revenue Code of 1954 because it was a congressional directive halting the Internal Revenue Service's application of Rev. Rul. 73-395.

[12]Such regulations have not yet been promulgated.

section 2119.[13] This conclusion is consistent with the fact that, in section 2119, Congress was concerned about the adverse effect that the *retroactive* application of Rev. Rul. 73-395 would have on the publishing industry. In enacting section 280, Congress provided that section 280 was to have *prospective* application.

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[13]We note that this Court, in dictum, has stated that sec. 2119 applies to authors, *Faura v. Commissioner*, 73 T.C. 849, 855-860 (1980). In light of our holding that sec. 280 is not subject to the provisions of sec. 2119, we need not resolve any question with respect to that dictum.