JOSEPH E. GOLDMAN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Goldman v. Commissioner
Docket No. 19229-88
United States Tax Court
T.C. Memo 1990-8; 1990 Tax Ct. Memo LEXIS 8; 58 T.C.M. (CCH) 1135; T.C.M. (RIA) 90008; January 4, 1990
Joseph E. Goldman, pro se. Scott P. Borsack, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined, for the taxable year 1984, a deficiency in petitioner's Federal income tax of $ 6,251.00, an addition to tax of $ 113.40 under section 6651(a)(1), [1] an addition to tax of $ 469.90 under section 6653(a)(1), and 50 percent of the interest due upon the entire deficiency under section 6653(a)(2). After concessions, the issues are: (1) whether petitioner's film-making activities were engaged in for profit within the meaning of section 183 during the year in issue, and if so, whether petitioner's film-making activities were merely preparatory *10 to the starting up of a trade or business and therefore not currently deductible; (2) whether petitioner is entitled to a home office deduction under section 280A; (3) whether during the year in issue petitioner properly deducted credit card charges made in 1983 and paid in 1984; and (4) what additions to tax, if any, are warranted. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation of facts and the attached exhibits are incorporated herein by reference. At the time of the filing of his petition, petitioner maintained his residence in New York, New York. Petitioner made his first film, "Almost," 7.5 minutes in length, at the age of 15 for which he was awarded the Kodak Teenage Movie Award and a Cine Eagle Award. Additionally, the United States was represented at the 1970 Cannes Film Festival by this film. In 1975, while attending college, petitioner was paid $ 3,000 for expenses and materials and $ 1,000 in pay by the State University of New York for the purchase of *11 his 11-minute film entitled "Coastal Marsh." Petitioner received professional awards for this second effort. [2] In 1976, petitioner began attending New York University graduate school and completed 2 years of a 3-year program in film. In 1978, petitioner was hired by the Woods Hole Oceanographic Institution (Woods Hole), a scientific institution, to make, produce, and edit a 20-minute film entitled "Research at the Interface." From 1978 to 1980, petitioner received $ 35,000 for the production of the film and $ 11,000 in salary. A dispute arose between Woods Hole and petitioner, culminating in the institution of legal proceedings by petitioner in 1984 in an effort to gain the negatives and distribution rights to the film. Petitioner has made no income from this film other than his salary and expenses for its production. In 1980, petitioner was placed on the U.S. Government's list of qualified contractors; however, as of the date of trial petitioner has not been awarded a contract. In 1981, petitioner registered *12 what he considered to be his "business" with New York State. During 1981, petitioner began working on the film under consideration herein, a 60-minute documentary on the Maine coastline and its fisherman. His stated aim was to complete the film and lease the broadcast rights to the film. He was convinced that it was a marketable product. Petitioner cannot sell the film until its completion. During the year in issue, petitioner earned $ 42,935.00 from his employment as a stagehand for the American Broadcasting Company, CBS, the Metropolitan Opera, Inc., the Shubert organization, and Rose Nederland Associates. Petitioner had no other source of income during that year. During 1984, petitioner worked an average of 15 to 20 hours per week on the 60-minute documentary in addition to his fulltime employment as a stagehand. As of the date of trial, the film remains incomplete, and petitioner continues to work an average of 20 hours per week on the film. Further, petitioner intends to complete the film, estimating that he will do so within 1-1/2 to 2 years and that the total expenses will approximate $ 118,000. Petitioner's total costs from 1980 to 1986 equal $ 68,000. He has made *13 nine trips to Maine for shootings. During 1984, petitioner also sought to have his films "Coastal Marsh" and "Research at the Interface" screened by CBS television. From 1977 to February 11, 1989, petitioner corresponded with various government agencies, communication services and television networks, foundations, and others with respect to having his films screened and marketed. Several letters received by petitioner express an interest in petitioner's prior films and his current undertaking. Petitioner reported a loss of $ 19,324 on Schedule C, Profit or Loss From Business or Profession, attached to his Federal income tax return for 1984 filed on May 29, 1985. Among the claimed deductions was $ 2,729 for rent on business property, representing the total rent paid by petitioner for his apartment which he claimed was used in his film-making activities. In addition, a deduction of $ 4,349, representing production costs, was reflected on Schedule C, including payments made in 1984 of $ 407 to credit card companies for items purchased in 1983. OPINION The principal issue before us is whether petitioner was engaged in the trade or business of film making during the taxable *14 year at issue. Petitioner contends that he was so engaged in that his activities in connection with the production of the 60-minute documentary were simply part of his continuing efforts to make and distribute films reflected by "Coastal Marsh" and "Research at the Interface." Respondent asserts that, during 1984, petitioner was not engaged in his film-making activities for profit within the meaning of section 183, and alternatively, if petitioner was so engaged, such activity was merely by way of preparing to go into the trade or business of making and distributing films. The issue involved herein is factual, and the burden of proof is on petitioner. Rule 142(a); Ronnen v. Commissioner, 90 T.C. 74, 92 (1988) (activity for profit); Jackson v. Commissioner, 86 T.C. 492, 514 (1986), affd. 864 F.2d 1521 (10th Cir. 1989) (preparation to engaged in a trade or business). With respect to the activity for profit issue, the ultimate factual determination is whether petitioner had an actual and honest objective of making a profit determined in light of all the facts and circumstances. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), *15 affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983). The regulations under section 183 list nine nonexclusive factors which the courts have consistently utilized in determining whether an activity has been engaged in for profit. See, e.g., Estate of Baron v. Commissioner, 83 T.C. 542, 554 (1984), affd. 798 F.2d 65, 72 (2d Cir. 1986). We see no need to set forth a detailed analysis of each of these factors. Suffice it to say that there are a variety of indications in the record herein which point in opposite directions. Thus, we note that petitioner conducted his activity in a serious manner, corresponding with numerous entities. Further, it appears that petitioner kept adequate records because he has substantiated stipulated production costs for the year in issue. He has demonstrated some ability in film making as a result of the shorter films which he made and his graduate studies. He has expended great time and effort and has shown a sincere commitment to the present documentary. On the other hand, there is no persuasive evidence reflecting a willing buyer or user for his 60-minute documentary much less the price which *16 such a buyer or user might be willing to pay for the completed film. The estimates given by a third party generally conversant with the industry, who testified on behalf of petitioner, were ball-park figures for which he provided no supporting foundation. The absence of any satisfactory figures as to the amount which might be realized from the activity is particularly troublesome in light of the length of time which has elapsed in producing the film, the large costs which petitioner has already incurred and is expected to incur before the 60-minute documentary is finished, and the total absence of any offsetting income. In short, after reviewing the record as a whole, we are unable to satisfy ourselves as to how the profit objective issue under section 183 should be resolved. Fortunately, resolution of that issue is not necessary for the disposition of this case because we have concluded that, even if petitioner were found to have had the requisite profit objective in 1984, we would sustain respondent's alternative contention, namely, that petitioner was, during 1984, merely preparing to enter the trade or business of producing and marketing films. Petitioner seeks to avoid the *17 impact of respondent's alternative contention by asserting that he has already established himself in the film-making business through his prior films and that his endeavors in respect of the 60-minute documentary are simply an extension of an existing activity. But the facts of the matter are that the prior films were of a different character, that petitioner made the films during and as part of his educational development, that his efforts to turn them into profit-making activities after their initial production have been totally ineffective, and that there was a considerable lapse of time between the making of these films and the initiation of the 60-minute documentary project. In short, we conclude that petitioner has failed to carry his burden of proof that his activities during 1984 constitute anything more than preparation to go into the film-producing business. Under these circumstances, he is not entitled to a deduction under section 162 for his expenditures in respect of the film during that year. Richmond Television Corp. v. United States, 345 F.2d 901, 907 (4th Cir. 1965), vacated per curiam on other grounds 382 U.S. 68 (1965); Jackson v. Commissioner, supra. *18 [3] Cf. Commissioner v. Idaho Power Co., 418 U.S. 1, 12 (1974). [4]
We reach our conclusion independently of any application of section 280, which respondent has not sought to apply to this case perhaps because of the possible application of Hadley v. Commissioner, 819 F.2d 359 (2d Cir. 1987), revg. Garrison v. Commissioner, 86 T.C. 764 (1986), and Golsen v. Commissioner, 54 T.C. 742, 756-758 (1970), affd. 445 F.2d 985 (10th Cir. 1971). We note, however, that Hadley involved authors, that books are of a different character than *19 films, and that the authors involved were well established in the trade or business of writing. Consequently, it is arguable whether the rationale of Hadley, much less Golsen, would apply to the facts herein.[5] Cf. also sec. 195. Our holding that petitioner was at best preparing to enter into a trade or business also disposes of the claimed deductions for home office expenses [6] and credit card charges. [7]
As to the additions to tax, the burden *20 of proof is on petitioner. Rule 142(a); Ewing v. Commissioner, 91 T.C. 396, 423 (1988). Section 6651(a)(1) imposes an addition to tax where the taxpayer fails to file a timely return, unless such failure is due to reasonable cause and is not due to willful neglect. As petitioner has failed to provide any evidence explaining his failure to file a timely return, we hold for respondent on this addition to tax. Section 6653(a) imposes an addition to tax if any part of any underpayment is due to negligence or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Under the circumstances of this case, we are satisfied that this addition to tax should not be sustained. To reflect our conclusions herein and the concessions of the parties, Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code as amended and in effect for 1984, and any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
2. There is no evidence that this award or that for "Almost" involved any financial benefit or that petitioner has at any time received any income from those films.↩
3. We have recently concluded that such expenses are also not deductible under sec. 212. Hardy v. Commissioner, 93 T.C. (Dec. 13, 1989), overruling Johnsen v. Commissioner, 83 T.C. 103 (1984), revd. 794 F.2d 1157 (6th Cir. 1986), and Hoopengarner v. Commissioner, 80 T.C. 538 (1983) (Court reviewed), affd. without published opinion 745 F.2d 66↩ (9th Cir. 1984). 4. Respondent, on brief, states that petitioner's expenses are added to basis and "can be recovered if and when petitioner ever sells the film."↩
5. We note that the legislative history reveals that the motion picture industry was the principal target of sec. 280. See particularly S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 109-119; General Explanation of the Tax Reform Act of 1976 prepared by the Staff of the Joint Comm. on Taxation, at pp. 67-77↩, 1976-3 C.B. (Vol. 2) 1, 79-89.
6. Sec. 280A(c)(5) would in any event preclude petitioner from any deduction for these expenses because he received no income from his film activity in 1984. ↩
7. Petitioner, in any event, would have been entitled to the deduction only in 1983 when the credit card charges were incurred. Schroeder v. Commissioner, T.C. Memo. 1986-583↩.