KEITH AND PIA KEATING, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Keating v. Commissioner
Docket No. 21172-91
United States Tax Court
T.C. Memo 1995-101; 1995 Tax Ct. Memo LEXIS 106; 69 T.C.M. (CCH) 2052; March 13, 1995, Filed *106 Decision will be entered under Rule 155. For petitioners: John O'Shea. For respondent: William J. Gregg and Mark A. Ericson. PANUTHOS
PANUTHOS
MEMORANDUM FINDINGS OF FACT AND OPINION PANUTHOS, Chief Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined deficiencies in petitioners' 1985 and 1986 Federal income taxes in the amounts of $ 4,274 and $ 4,445, respectively. After a concession by petitioners, [2] the issues are: (1) Whether a portion of income received by petitioner Keith Keating (hereinafter sometimes petitioner) from his employer constitutes Schedule C income; (2) whether petitioners are entitled to deductions for recording expenses; (3) whether petitioners are entitled to deductions for telephone expenses; (4) whether petitioners are entitled to deductions for travel expenses; (5) whether petitioners are entitled to deductions for automobile expenses; (6) whether petitioners are entitled to a deduction in 1986 for depreciation of office equipment; (7) whether certain deductions were properly claimed on Pia Keating's Schedule C; and (8) whether petitioners are entitled to a deduction *107 in 1986 for depreciation of a computer and software. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition, petitioner resided in Lockwood, New York, and Pia Keating resided in Ithaca, New York. At the outset we note that the record keeping by petitioners for the years in issue was nominal and disorganized. Petitioners' counsel, despite admonishment from the Court, continually attempted to place the blame for the lack of records on respondent. It is clear that petitioners have the burden *108 of proof on all issues in this case. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). While we found petitioners generally to be credible witnesses, the lack of consistent record keeping and the disorganized presentation by their counsel caused the Court much additional effort in reviewing the record and sorting out the issues. Thus, the responsibility for any omissions in the record lies with petitioners' counsel. Given that petitioners have the burden of proof, such omissions resulted in findings against them. During the years at issue, petitioner was a full-time, tenured professor of English at Nassau Community College (Nassau). Petitioner taught courses on Shakespeare during the day and regularly conducted office hours from an office located at Nassau. Petitioner also taught courses on Shakespeare during the evenings and in the summers at Nassau and at various high schools for which he was paid by Nassau. While petitioner was a tenured professor (a full-time salaried position) in connection with the day classes, he was a member of the adjunct faculty (compensated according to class hours taught) in connection with teaching the evening *109 and summer classes. Petitioner received a series of checks from Nassau for the evening and summer classes separate from the compensation for petitioner's work as a full-time professor. In general, compensation for teaching the day courses was greater than for the evening and summer courses. Petitioner received Forms W-2 from Nassau indicating wages paid for 1985 and 1986 in the amounts of $ 50,097.27 and $ 52,207.51, respectively. Of the income received from Nassau and reported on the Forms W-2, petitioner reported $ 10,497 and $ 7,285, respectively, on Schedules C of petitioners' 1985 and 1986 Federal income tax returns, representing compensation for teaching the evening and summer classes. Petitioner never discussed with Nassau the reason that his entire income from Nassau was reported on Forms W-2. In November 1985, petitioner was invited to deliver a lecture at Exeter University in England as part of a symposium on Wilson Knight, a notable Shakespearean scholar and friend of petitioner. Petitioner's lecture eulogized Wilson Knight, who had recently died, and praised his work. Pia Keating accompanied petitioner on the trip to England, but was not involved with the symposium. *110 In 1986, petitioner was invited to speak at the European Academy in Paris, France. Petitioner was inducted into the European Academy and delivered a speech on Shakespeare. Petitioner also traveled to Simon's Rock College of Bard (hereinafter Simon's Rock) in Great Barrington, Massachusetts, to deliver lectures on two occasions in 1986. Petitioner was compensated by Simon's Rock for conducting these lectures. In 1985, petitioner began preparation of a series of taperecorded interdisciplinary lectures to be played over the radio as a Shakespeare course for college credit. Petitioner's interdisciplinary teaching method is an attempt to make Shakespeare's works more accessible to students by coordinating readings of Shakespeare's plays with music, sound effects, and descriptions of paintings and sculptures. The entire program was recorded on 60 reel-to-reel tapes, which were broadcast over the radio as a college credit course. The first 30 tapes, broadcast over the first semester, discussed Shakespeare's tragedies, and the second 30 tapes, broadcast over the second semester, discussed Shakespeare's comedies. The tapes were also used at other universities besides Nassau. Petitioner *111 never intended to sell the tapes and received no income for the broadcasts. Petitioner created the tapes in the course of his employment as a professor, working on them during hours that he otherwise would have been teaching in the classroom. In order to broadcast the music in connection with the program, petitioner was required to obtain permission from publishing companies that owned rights to the music. The licenses obtained by petitioner were granted solely for the purposes of broadcast. In the course of compiling the music, petitioner made telephone calls to obtain the broadcast rights, purchased records from record stores, and dubbed the music onto tape at Workshoppe Recording Studios and Tiki Recording Studios. Petitioner also had pamphlets, brochures and flyers printed at printing companies to advertise the broadcast. On the Schedules C attached to petitioners' 1985 and 1986 Federal income tax returns, petitioner deducted the following expenses: Expense 1985 1986 Car
$ 4,508
$ 4,658
Dues and publications
131
514
Travel
1,408
2,004
Telephone
761
616
Continuing education
810
1,920
Recording expenses
8,543
4,553
Depreciation
-0-
313
Postage and other expenses
44
586
*112 Respondent disallowed all of the Schedule C deductions but allowed as miscellaneous itemized deductions the expenses for dues and publications, continuing education, and postage and other expenses. Accordingly, the following items with regard to petitioner remain in dispute: Expense 1985 1986 Car
$ 4,508
$ 4,658
Travel
1,408
2,004
Telephone
761
616
Recording expenses
8,543
4,553
Depreciation
-0-
313
During the years in issue, Pia Keating was a Ph.D. student at Columbia University, studying communication and language development. In 1985, she also served as a research assistant for Dr. Lois Bloom at Columbia University, which involved working a few hours a week at a laboratory to study language development in children's cognitive development. During 1985, Pia Keating received income, reported on Forms W-2, from Teacher's College, Columbia University. In 1986, in addition to continuing her education and working as a research assistant, Pia Keating performed clinical work in Port Washington, New York. She also taught classes in communications and psychology at local colleges, including teaching at Nassau for about 4 weeks during the summer and at Hofstra *113 University during the spring and fall semesters. During 1986, Pia Keating received income, reported on Forms W-2, from Hofstra University, Nassau, and Teacher's College, Columbia University. Pia Keating purchased a computer in 1986, which she used in the course of her business and doctoral work, typing manuscripts, reports, course outlines, and envelopes. None of her employers required her to purchase the computer. She also typed scripts for petitioner's radio program and prepared petitioner's reports. In addition, she used the computer to facilitate her rehabilitation from brain surgery in 1984, performing exercises several times daily to improve her reaction time. On Schedules C attached to petitioners' 1985 and 1986 Federal income tax returns, Pia Keating reported income in connection with petitioner's alleged teaching business in the amounts of $ 835 and $ 2,871, respectively. Pia Keating deducted the following expenses on her Schedules C for 1985 and 1986: Expenses 1985 1986 Car
$ 2,190
$ 2,832
Dues and other expenses
30
94
Continuing education
609
312
Depreciation
-0-
2,304 Respondent disallowed all of the Schedule C deductions but allowed as miscellaneous, *114 itemized deductions expenses for continuing education and the dues and other expenses. [3] After the concession by petitioners, only the depreciation expense for 1986 is at issue with regard to Pia Keating. OPINION 1. Classification of Income Received from Nassau
The first issue involves determination of whether petitioner was an "employee" of Nassau in connection with teaching the evening and summer courses. If we find petitioner to be an employee, he is not entitled to report his income on Schedule C, but must report such income as wages on the first page of the Form 1040. The Internal Revenue Code does not define "employee" for purposes of the issue presented in this case, and we must, therefore, look to common law principles to determine whether petitioner was an employee in connection with teaching the evening and *115 summer courses. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 112 S.Ct. 1344, 1348 (1992); Weber v. Commissioner, 103 T.C. 378, 386 (1994); Professional & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); Johnson v. Commissioner, T.C. Memo. 1993-530. Although there is no clear cut definition of "employee", common law principles require us to consider certain factors such as the following: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the individual for profit or loss; (4) whether or not the principal has the right to discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating. United States v. Silk, 331 U.S. 704, 716 (1947); Weber v. Commissioner, supra; *116 Professional & Executive Leasing, Inc. v. Commissioner, supra; Simpson v. Commissioner, 64 T.C. 974, 984-985 (1975). We find that petitioner was an employee of Nassau in connection with his teaching of summer and evening classes. Petitioner had no investment in classrooms or facilities at Nassau or at the other schools in which he taught, was not at financial risk, and performed work closely related to his daytime work. Moreover, the Forms W-2 issued by Nassau to petitioner included compensation for teaching the summer and evening classes. Nassau considered petitioner to be an employee in connection with that activity, and petitioner did not approach Nassau to have the nature of the payments reclassified. Therefore, the objective facts demonstrate that petitioner and Nassau were in an employer-employee relationship. 2. Deductions
As petitioner was an employee of Nassau, any deductions to which he would be entitled come under Schedule A, and are determined under section 162(a). Primuth v. Commissioner, 54 T.C. 374, 377 (1970). Section 162 generally allows a taxpayer to deduct *117 all ordinary and necessary expenses incurred during the taxable year in carrying on a trade or business. Sec. 162(a). An expense is ordinary if it is considered to be "normal, usual, or customary" in the context of the particular business out of which it arose. Deputy v. duPont, 308 U.S. 488, 495-496 (1940). An expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. Commissioner v. Tellier, 383 U.S. 687, 689 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). a. Petitioner Keith Keating
(1) Recording expenses
Petitioner claims that the expenses he incurred in connection with the production of the Shakespeare tapes were ordinary and necessary to the conduct of his trade or business as a professor and, therefore, deductible. Respondent contends that such expenses should be capitalized and deducted using the income forecast method as prescribed by section 280(a). [4] Respondent concludes that, because petitioner earned no income from the production of the *118 Shakespeare tapes, petitioners are not entitled to any deductions. Sec. 280(b). Section 280(a) provides that, in the case of an individual, amounts attributable to the production of a film, sound recording, book, or similar property which are otherwise deductible shall be allowed as deductions only in accordance with section 280(b). Section 280(b) prescribes that the production costs be prorated over the income generating period of the asset produced: The amount deductible for any such taxable year is an amount which bears the same ratio to the sum of all such amounts (attributable to such film, sound recording, book, or similar property) as the income received from the property for that taxable year bears to the sum of the income the taxpayer may reasonably be expected to receive during such period.
The term "sound recording" is defined in section 280(c) which provides as *119 follows: The term "sound recording" means works that result from the fixation of a series of musical, spoken, or other sounds, regardless of the nature of the material objects, such as discs, tapes, or other phonorecordings, in which such sounds are embodied.
The tapes produced by petitioner appear to fit within the literal language of section 280. Petitioners argue, however, that section 280 was intended to address tax shelter activity and not to disallow deductions for ordinary and necessary expenses incurred in carrying on a trade or business. We disagreed with a similar argument in two previous opinions but were reversed by the United States Court of Appeals for the Second Circuit. See Hadley v. Commissioner, 819 F.2d 359 (2d Cir. 1987), revg. T.C. Memo. 1986-173, and Garrison v. Commissioner, 86 T.C. 764 (1986). As this case is appealable to the Court of Appeals for the Second Circuit, we examine the argument in light of Hadley. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). *120 Hadley concerned whether an author was entitled to deduct expenses incurred in writing a book or whether the expenses had to be capitalized and deducted according to the income forecast method as provided by section 280(b). Id. at 360. The Court of Appeals for the Second Circuit determined that the language of section 280(a) was ambiguous and, thus, looked to the legislative history for further guidance as to whether the statute was intended to cover expenses incurred by an author in connection with writing a book. Id. Upon a review of the legislative history, the Court of Appeals held that section 280 was "aimed principally at tax shelter activity, namely production company tax shelter partnerships organized to produce films, sound recordings or books". Id. The Court of Appeals reasoned that the statute, therefore, "by no means was intended to apply to an author's creation of the manuscript underlying the book to be published". Id.
Respondent attempts to distinguish the facts of this case from Hadley, by suggesting that the holding in Hadley was limited to the applicability of section 280 to authors. The Court of Appeals in Hadley spent considerable *121 time analyzing whether the word "production" used in section 280 is equivalent to writing a book, and determined that it encompassed writing but was not its equivalent. Id. at 361-362. The Court of Appeals then concluded that "There is nothing in the legislative history to indicate that authors were among the intended targets of Code section 280". Id.
We do not read Hadley as narrowly as does respondent. We do not believe that section 280 was intended to apply to petitioner's creation of taped lectures in connection with his employment as a college professor. According to the report of the Senate Finance Committee, the statute was meant "to apply to persons * * * engaged in the service of producing, displaying, or distributing a film, sound recording * * * book or similar property". S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 115-116. The report states that section 280 was intended: To prevent a situation where a taxpayer may attempt to accelerate his deductions in connection with the production costs of a motion picture film, thus producing a mis-matching of income and expenses attributable to the income, the committee amendment *122 provides that a taxpayer is to be required to capitalize his share of the production costs and deduct them over the life of the income stream generated from the production activity. * * * [S. Rept. 94-938 (1976), 1976-3 C.B. (Vol. 3) at 115.]
The thrust of the statute was to remedy tax shelter activity that attempted to exploit a potential for accelerating deductions of expenses relative to recognition of income. The concern over preventing the mismatching of income and expenses is not present here because petitioner never intended to earn income directly from the production of the tapes, but created them in connection with his employment as a professor. It would be incongruous to require petitioner to amortize the cost of creating the tapes over the projected life of their income stream when no direct earnings (apart from petitioner's salary) were intended by their creation. Petitioner's situation is more analogous to a professor's incurring ordinary and necessary expenses in connection with research in his capacity as an educator. In this regard, we note that the Commissioner stated in Rev. Rul. 63-275, 1963-2 C.B. 85; *123 "the duties of a professor * * * encompass not only the usual lecture and teaching duties but also the communication and advancement of knowledge through research and publication." The Commissioner recognized that "Where the research is undertaken with a view to scholarly publication, the expenses for such purposes can not usually be considered to have been incurred for the purpose of producing a specific income-producing asset." Id. Based on the facts presented, the Commissioner concluded the following: research expenses, including traveling expenses properly allocable thereto, incurred by a professor for the purpose of teaching, lecturing, or writing and publishing in his area of competence, as a means of carrying out the duties expected of him in his capacity as a professor and without expectation of profit apart from salary, represent ordinary and necessary business expenses incurred in that capacity and are, therefore, deductible under section 162(a) of the Code. * * * [Id. at 86.]
Although revenue rulings do not constitute binding authority on this Court, Estate of Lang v. Commissioner, 64 T.C. 404, 406-407 (1975), affd. in part *124 and revd. in part 613 F.2d 770, 776 (9th Cir. 1980), we may adopt their reasoning. Neuhoff v. Commissioner, 75 T.C. 36, 46 (1980), affd. per curiam 669 F.2d 291 (5th Cir. 1982). We agree with the conclusion reached in Rev. Rul. 63-275, supra, not because we rely upon it for authority but because we conclude that it is correct. The Shakespeare tapes were created by petitioner in the course of his duties as a professor to educate students by relating Shakespeare's works to other forms of contemporary art. Petitioner did not profit from creating the tapes, and they were used solely for the purpose of education. This is not a situation of an expense that has both business and personal overtones as is so often involved in research-travel related expenses. See Drury v. Commissioner, T.C. Memo. 1977-199. Petitioner's expenses were strictly limited to obtaining recordings of music and renting studio time in an effort to create recorded lectures that served no other purpose but to further his teaching of Shakespeare. Our decision *125 to allow petitioners to deduct substantiated recording expenses is further supported by this Court's opinion in Faura v. Commissioner, 73 T.C. 849 (1980). [5] In Faura, we held that expenses incurred by the taxpayer in connection with writing books were ordinary and necessary business expenses in carrying on his trade of being an author and, thus, deductible under section 162. Id. Similarly, although petitioner was not in the business of producing tapes, research expenses that are a "means of carrying out the duties expected of him in his capacity as a professor and without expectation of profit apart from salary" are ordinary in the course of business as a professor. Rev. Rul. 63-275, supra. The Court of Appeals for the Tenth Circuit in Snyder v. United States, 674 F.2d 1359 (10th Cir. 1982), agreed with our decision in Faura and held that a taxpayer engaged in the trade or business of being an author "may currently deduct those items shown to be ordinary and necessary rather than capitalize them." Id. at 1365. Although the Court *126 of Appeals for the Seventh Circuit, in Encyclopaedia Britannica, Inc. v. Commissioner, 685 F.2d 212 (7th Cir. 1982), revg. T.C. Memo. 1981-255, questioned the holding in Faura v. Commissioner, supra, the Court of Appeals for the Second Circuit, in Hadley v. Commissioner, supra, "agree[d]" with this Court that "authors' prepublication expenses need not be capitalized under Code section 263." Hadley v. Commissioner, 819 F.2d at 363. As we stated supra, this case is appealable to the Court of Appeals for the Second Circuit. As for the amount of recording *127 expenses incurred, petitioners proved that $ 7,526.12 of the amount claimed for 1985 and $ 4,358.85 of the amount claimed for 1986 were ordinary and necessary business expenses related to the creation of the Shakespeare tapes. These amounts represent the sum of the amounts indicated on the canceled checks and submitted invoices. [6] We find that petitioners are not entitled to deduct the cost of records purchased because we are unable to determine the extent to which the recordings were purchased for use in the Shakespeare tapes as opposed to petitioners' personal use. See Sharon v. Commissioner, 66 T.C. 515, 524 (1976), affd. 591 F.2d 1273 (9th Cir. 1978); Drury v. Commissioner, T.C. Memo. 1977-199. As for the claimed expenses for printing, petitioners failed to prove which amounts, if any, are attributable to promoting the broadcast of the Shakespeare series. *128 (2) Telephone
For 1985 and 1986, petitioners claimed telephone expenses in the amounts of $ 761 and $ 616, respectively, for telephone calls to record companies for permission to use music for petitioner's tape recordings, and for other business purposes in connection with petitioner's employment as a professor. In support thereof, petitioners offered telephone bills from January 1985, and March 1985 through December 1986, and copies of three letters of correspondence with record companies. The telephone bills contain marginalia reflecting that some of the calls were made to obtain permission to use copyrighted music. The burden is on petitioner to prove that he is entitled to the deductions claimed. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). If certain claimed deductions are not adequately substantiated, we may estimate them when we are convinced from the record that the taxpayer has incurred such expenses and we have a basis upon which to make an estimate. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). While *129 we are convinced that petitioner did incur some telephone expenses in connection with the recording and in connection with his employment, we are given little evidence of those expenses. For the months of January and March 1985, we note, based upon the addresses on the letter correspondence with record companies, six telephone calls that may have been made to obtain permission to use copyrighted material. The cost of these telephone calls amounts to $ 8.08. Given the dearth of support for any other telephone expenses, we allow this amount for 1985 and no more for either of the 2 years at issue. (3) Travel
Petitioner claimed deductions in the amounts of $ 1,408 and $ 2,004, respectively, for 1985 and 1986 in connection with travel for business. The claimed expenses were incurred for travel to England in 1985, and France and Massachusetts in 1986. To be entitled to a deduction under section 162(a)(2), petitioner must prove that the expenses: (1) Were ordinary or "normal, usual or customary", Deputy v. duPont, 308 U.S. 488, 495 (1940); (2) were necessary or "appropriate and helpful", Welch v. Helvering, 290 U.S. 111, 113 (1933); *130 and (3) bore a reasonable and proximate relationship to the trade or business of the taxpayer, Kinney v. Commissioner, 66 T.C. 122, 126 (1976); Hosbein v. Commissioner, T.C. Memo. 1985-373. In addition, under section 274(d), petitioner must substantiate with adequate records or by sufficient evidence corroborating his statement (A) the amount of such expense, (B) the time and place of the travel, (C) the business purpose of the expense, and (D) the business relationship to the taxpayer of the persons entertained, using the facility or property, or receiving the gift. Sec. 274(d); sec. 1.274-5, Income Tax Regs.[7] We do not take into account expenses for Pia Keating, nor do we allow unsubstantiated expenses for meals, entertainment, or withdrawals of cash, where petitioners did not explain any business purpose for such expenditures or the persons entertained in connection therewith. Sec. 274(d). We are unable to estimate taxpayer's expenses because section 274(d) is intended to supersede Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Jeffers v. Commissioner, T.C. Memo. 1986-285; *131 sec. 1.274-5(a)(3), Income Tax Regs.
While we believe that the travel to Simon's Rock in 1986 was in pursuit of a trade or business within the meaning of section 162(a)(2), petitioners failed to adequately substantiate any expenses in connection therewith. Sec. 274(d); sec. 1.274-5, Income Tax Regs. Petitioners placed two canceled checks into evidence, but we note that while petitioner *132 supposedly took the trip to Simon's Rock by himself, the canceled checks in payment for hotels offered by petitioners were signed by Pia Keating. Furthermore, petitioner testified that one of the canceled checks was payment for an overnight stay at a Ramada Inn located in Ithaca, New York, not in Massachusetts. Moreover, the claimed expenses for automobile travel were not substantiated. [8] Under such circumstances, we find neither petitioner's testimony nor any corroborating evidence compelling. Sec. 1.274-5(c), Income Tax Regs.
With regard to travel to England and France, we find that petitioners proved that the trips were pursued in carrying on petitioner's trade or business. Secs. 162(a)(2), 274(d). *133 In both instances, petitioner was invited to speak at symposiums on topics relating to petitioner's employment as an English professor and Shakespearean scholar. The substantiation of the claimed expenses incurred on these trips, however, left something to be desired. For petitioner's trip to England, on which Pia Keating accompanied him, petitioner's testimony was corroborated by receipts for the following: Train tickets from London to Exeter ($ 112), a 1-night stay at the Sheraton Heathrow Hotel ($ 56.25), and airfare from New York to London ($ 448). [9] *134 We discounted the cost of 3-nights' stay at the Tavistock Hotel in London and a 1-night stay at the Sheraton Skyline Hotel in Hayes, England, which is proximate to London, because we note that Exeter is a good distance from London, and petitioners presented no business reason for staying in or near London. In connection with petitioner's trip to France in 1986, petitioners submitted only one canceled check for a hotel in Paris ($ 375) and a record of a cash withdrawal. [10]
Our analysis, however, does not end here. Because the trips were to conventions in European countries, petitioners must contend with the provisions of section 274(c) and (h) to be entitled to deductions for the trips to England and France. Section 274(h) provides that no deduction shall be allowed for expenses allocable to attendance of a convention, seminar, or similar meeting which is held outside North America unless the taxpayer establishes, in addition to the business purpose, that it is as reasonable for the meeting to be held outside the North American area as within the North American area. Sec.274(h)(1). [11] It is clear that the travel to England and France was for meetings that were reasonably held outside North America. The meeting in England to commemorate Wilson Knight, a British Shakespearean scholar, was hosted by the University of Exeter, so naturally it took place in Exeter. The meeting in France was sponsored by UNESCO and the European Academy, *135 organizations with residences in Europe, and, thus, it was reasonable to have this meeting in France. Section 274(c) requires the proration of foreign travel expenses between business and nonbusiness activities except where the travel outside the United States does not exceed 1 week, or less than 25 percent of the time spent in such travel is not attributable to the pursuit of the taxpayer's trade or business. Sec. 274(c)(2). For purposes of section 274(c), 1 week equals 7 days, and in determining whether the taxpayer traveled in excess of one week, the *136 regulations prescribe that the day of departure is not counted but the day of return is counted. Sec. 1.274-4(c), Income Tax Regs. Petitioners' flight to England departed from New York City's Kennedy Airport on November 1, 1986, and the return flight arrived in New York on November 7, 1986. Accordingly petitioners' travel to England for exactly 7 days did not exceed 1 week and falls under an exception of section 274(c)(2). Therefore, there is no requirement that petitioners apportion their travel expenses between business and nonbusiness activities with regard to the trip to England. We are unable to determine from the record whether petitioner's trip to France falls under any exception under section 274(c)(2), but, because petitioner presented and we allow only the $ 375 expense for the hotel, we apportion the entire amount to business. Accordingly, the amount of substantiated deductions for the England and France trips, indicated supra, are deductible. (4) Car
Automobile expenses incurred in carrying on a trade or business within the locality in which the taxpayer lives and works are deductible, if at all, under section 162(a). United States v. Correll, 389 U.S. 299 (1967); *137 Davis v. Commissioner, T.C. Memo. 1993-599. For years after 1985, a deduction for local automobile travel must meet the strict substantiation requirements of section 274(d).[12]
Petitioners claimed deductions in connection with the lease and repair of petitioner's 1982 Porsche 924 and for gasoline and toll charges in connection with business travel within the New York City metropolitan area. Petitioner testified that he traveled to Columbia University about twice per week in 1985, traveled regularly for 19 weeks to New York City and Glen Cove, New York, in connection with production of the Shakespeare tapes, traveled to Garden City to deliver evening lectures, and traveled to Baldwin or Oceanside, New York, for Shakespeare *138 seminars. In support of his automobile expenses, petitioner submitted a motor vehicle lease, repair and insurance bills, and various canceled checks. Petitioners' submissions do not constitute adequate documentation to substantiate such expenses, and, accordingly, we find that petitioners are not entitled to any deductions for automobile expenses for 1986. Sec. 274(d), sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46025 (Nov. 6, 1985). With regard to 1985, there was no substantiation requirement under section 274(d) for local automobile travel incurred in connection with business, so we must determine whether such expenses were incurred in the pursuit of petitioner's trade or business. Commuting expenses to work are generally nondeductible, Beards v. Commissioner, T.C. Memo. 1984-438, as are commuting expenses between home and school for education. Zimmerman v. Commissioner, 71 T.C. 367, 370 (1978), affd. without published opinion 614 F.2d 1294 (2d Cir. 1979). Petitioner failed to prove that the commuting expenses for continuing education *139 were not from his place of residence. We believe, however, that petitioner incurred deductible automobile expenses in connection with the production of the Shakespeare tapes and attendance at the Shakespeare seminars. Where we are convinced that the taxpayer incurred ordinary and necessary business expenses, we may estimate such expenses. Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). Given that petitioner used his automobile for a variety of nondeductible purposes, we allow petitioner 5 percent of his claimed automobile deductions for 1985, or $ 225.40. In so doing, we are careful not to overestimate petitioners' deductions because the ambiguity in the record was due to petitioners' failure to present adequate records at trial. (5) Depreciation
For 1986, petitioners claimed depreciation deductions under section 179 in connection with the cost of a file cabinet and telephone answering machine purportedly used by petitioner for business. Section 179 allows the taxpayer to elect to expense in the year placed in service the cost of section 179 property. Sec. 179(a). The aggregate annual deduction allowed under section 179 is limited to *140 $ 10,000. Sec. 179(b)(1). Section 179 property is defined as section 38 property which is acquired by purchase for use in a trade or business. Sec. 179(d)(1). Petitioners failed to prove that either of these items was purchased for use in a trade or business. Petitioner testified that the file cabinet was not used in connection with petitioner's profession, and petitioner was unable to remember whether the answering machine was used for personal or business purposes. Accordingly, we find that petitioners are not entitled to deductions for depreciation of the file cabinet and telephone answering machine. b. Petitioner Pia Keating
(1) Schedule C Deductions
Respondent disallowed all of the deductions claimed on Pia Keating's Schedule C, but allowed some of these deductions as miscellaneous itemized deductions. Because we hold that petitioner is not entitled to deductions under Schedule C relating to his purported teaching business, we hold the same for Pia Keating. In addition, petitioners presented no evidence of any Schedule C activity conducted by Pia Keating and, therefore, we sustain respondent on this issue. (2) Depreciation
For 1986, petitioners claimed *141 depreciation deductions under section 179 in connection with the cost of a computer and software purportedly used by Pia Keating for business and education. Alternatively, petitioners claim the entire expense as a medical expense under section 213. We examine each of these claims separately. First, Pia Keating failed to prove that she used the computer in connection with her husband's business of being a professor or in connection with her part-time employment. Although she testified that she prepared petitioner's reports, petitioner testified that he had access to a secretary at Nassau, and we are not convinced that any work done by Pia Keating with regard to petitioner's employment was substantial. Moreover, Pia Keating had access to computers in the lab at Columbia University in connection with her employment. Second, Pia Keating failed to prove that she is entitled to claimed deductions in connection with her education. Educational expenses may constitute deductible trade or business expenses if the education for which the expenses are made (1) maintains or improves skills required in the taxpayer's trade or business, or (2) meets the express requirements of the taxpayer's *142 employer (or of applicable law or regulations) imposed as a condition for the taxpayer to retain an established employment relationship. Damm v. Commissioner, T.C. Memo. 1981-203; sec. 1.162-5(a)(1) and (2) Income Tax Regs. Educational expenses that meet at least one of these two criteria are deductible unless the education either is required to meet the minimum educational requirements for qualification in the taxpayer's employment, or leads to qualifying the taxpayer for a new trade or business. Davis v. Commissioner, 65 T.C. 1014, 1018-1019 (1976); Landahl v. Commissioner, T.C. Memo. 1980-461; sec. 1.162 -5(b), Income Tax Regs.
For the year in issue, Pia Keating was studying toward a Ph.D., taking courses in communications and language development. Petitioner also was employed part time as a research assistant, analyzing language development at Columbia University. In addition, she taught part-time communications and psychology at Hofstra University and Nassau. We do not believe that the courses taken by Pia Keating were to maintain or improve her skills in her trade or business *143 because, given the sporadic part-time work, it is difficult to determine the nature of her trade or business. In any event, whether she considered herself a teacher or a research assistant, we surmise that by obtaining a Ph.D., Pia Keating would be qualified for a new trade or business, that of being a college professor. Accordingly, we find that the computer does not constitute deductible educational expenses. See Davis v. Commissioner, supra at 1014-1020. Finally, Pia Keating claims that the computer was used for rehabilitation after she underwent brain surgery in 1984. Section 213 allows deductions for expenses, not compensated by insurance, incurred for medical care to the extent that the expenses exceed 5 percent of adjusted gross income. Sec. 213(a). The term "medical care" means amounts paid for, among other things, cure, mitigation, and treatment of disease, or for the purpose of affecting any structure or function of the body. Sec. 213(d)(1)(A). With regard to capital expenditures made for medical care, section 1.213-1(e)(1)(iii), Income Tax Regs., provides that "a capital expenditure made by the taxpayer may qualify as a medical *144 expense, if it has as its primary purpose the medical care * * * of the taxpayer, his spouse, or his dependent [emphasis added]". Petitioners offer the medical care justification for the deduction as their third alternative argument. We are not persuaded that the computer was purchased for the primary purpose of rehabilitating Pia Keating from her brain surgery. In addition, while Pia Keating testified that she purchased programs to help her improve her reaction time, petitioners did not offer into evidence any record of expense for these programs, and we do not venture to estimate an amount. Accordingly, we find that expenses related to the computer are nondeductible, personal expenses. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In their posttrial brief, petitioners conceded that they are not entitled to deduct Pia Keating's claimed automobile expenses in the amounts of $ 2,190 and $ 2,832 for 1985 and 1986, respectively.↩
3. As discussed, infra↩, on the record presented we do not believe that Pia Keating's education expenses qualify as deductible expenses but we will not disturb respondent's determination.
4. Sec. 280 was repealed for years after Dec. 31, 1986. Tax Reform Act of 1986, Pub. L. 99-514, sec. 803(b)(2)(A), 100 Stat. 2355.↩
5. The expenses in question in Faura v. Commissioner, 73 T.C. 849 (1980), were incurred before the effective date of sec. 280. We note that the holding in Faura↩ is overridden by the passage of sec. 263A in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 803, 100 Stat. 2350.
6. In calculating the allowable expense deductions, we considered the invoices from Workshoppe Recording Studios and the canceled checks payable to Tiki Recording Studios, but, to avoid double counting, did not consider any invoices from Tiki Recording Studios.↩
7. The Commissioner promulgated sec. 1.274-5T, Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985), for taxable years beginning on or after Jan. 1, 1986. The relevant changes in the regulations from 1985 to 1986 primarily reflect the addition of sec. 274(d)(4)↩, which makes the substantiation requirements applicable to listed property as defined in sec. 280F(d)(4). While this case concerns both 1985 and 1986, we will refer to the regulations in existence in 1985 unless reference is directed only to the 1986 year or the subject matter concerns an issue affected by the changes in the regulations.
8. In 1985, automobile expenses for travel away from home, unlike for local transportation, were subject to the substantiation requirements of sec. 274(d). Automobile expenses for local travel were made subject to sec. 274(d) pursuant to an amendment effective for years beginning in 1986. See sec. 274(d)(4)↩.
9. For some of the expenses, we are unable to determine whether the amounts were denominated in dollars or in pounds sterling. Given no evidence of the exchange rate, we assume that all of the amounts are denominated in dollars.↩
10. It is difficult to determine the name of the hotel from the canceled check, but we are convinced that it is a hotel in Paris.↩
11. Factors to be considered are the following: (A) The purpose of such meeting and the activities taking place at such meeting, (B) the purposes and activities of the sponsoring organizations or groups, (C) the residences of the active members of the sponsoring organization and the places at which other meetings of the sponsoring organization or groups have been held or will be held, and (D) such other relevant factors as the taxpayer may present. Sec. 274(h)(1)↩.
12. Sec. 274(d)(4) was added to apply to years beginning after 1985. Sec. 274(d)(4)↩ requires substantiation for expenses "with respect to any listed property (as defined in sec. 280F(d)(4))". Sec. 280F(d)(4) includes any passenger automobile as listed property.